Nos. 96-2122/2124

United States of America,          *
                                  *
     Appellee,             *
                                  *  Appeal from the United States
     v.                  *  District Court for the
                                  *  District of Nebraska.
Robert Dunlap,            *
                                  *       [UNPUBLISHED]
     Appellant.           *

Submitted:  October 23, 1996

Filed:  December 10, 1996

Before RICHARD S. ARNOLD, Chief Judge, and FLOYD R. GIBSON and
    MORRIS SHEPPARD ARNOLD, Circuit Judges.

PER CURIAM.

After a four-day trial in 1995, a federal jury convicted Robert Dunlap and a co-defendant, see United States v. Schwalb, 83 F.3d 1039 (8th Cir. 1996) (per curiam), of four counts of wire fraud and two counts of interstate transportation of stolen property. Those charges related to the alleged purchase of a woolen mill and some commercial sewing machines. After a two-day trial in 1996, a federal district judge,[1] sitting without a jury, convicted Robert Dunlap of one count of wire fraud and four counts of interstate transportation of stolen property. Those charges related to the alleged purchase of German bonds.

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

The trial court, which was the same in both cases, sentenced Mr. Dunlap to 18 months in prison and the payment of $128,000 in restitution. Mr. Dunlap appeals his convictions, contending that the evidence was insufficient to show an intent to defraud. We disagree and therefore affirm the judgments of the trial court.

I.

In the jury trial, the owner of a small business testified that Mr. Dunlap and his partner induced him to pay $50,000 to them by representing that the money would be used as earnest money for the purchase of a woolen mill repossessed by a savings and loan that itself had been taken over by the Resolution Trust Corporation (RTC). According to Mr. Dunlap, the businessman testified, once the woolen mill had been bought from the RTC by Mr. Dunlap and his partner, it would be resold to a Mexican buyer at a profit of $200,000, of which $100,000 would be returned to the businessman, thus yielding a 100 percent return on his investment.

In order to gain his trust, the businessman said, Mr. Dunlap showed him two purported contracts -- one for purchase of the woolen mill from the RTC by Mr. Dunlap and his partner and one for sale of the woolen mill from Mr. Dunlap and his partner to a Mexican buyer. The businessman stated that Mr. Dunlap represented that the originals of the contracts were on file with the RTC and that "the deal was done" and risk-free. Two employees of the RTC at the relevant time, however, testified that the contracts that the businessman saw were not contracts used by the RTC and were never on file with the RTC. An additional witness, the broker with the listing for the woolen mill, testified that no earnest money was ever received from Mr. Dunlap or sent to the RTC. The jury was entitled to believe this testimony, and we believe that the evidence of Mr. Dunlap's misrepresentations to the businessman about the use to which his money would be put was adequate to show Mr. Dunlap's intent to defraud the businessman of $50,000.

-2-

The businessman further testified that Mr. Dunlap's partner induced him to pay an additional $28,000 by representing that it would be used for the purchase of commercial sewing machines for which a subsequent buyer was already secured. The businessman testified that according to Mr. Dunlap's partner, the quick turnover of the sewing machines would allow the businessman to receive $42,000, or a return of 50 percent.

To gain his trust, the businessman said, Mr. Dunlap's partner showed him a schedule for the initial purchase, packing and shipping, and subsequent sale of the commercial sewing machines. According to the businessman's testimony, Mr. Dunlap's partner represented the transaction as being risk-free. The businessman further testified that after he wired the money to a bank account held jointly by Mr. Dunlap and his partner, the partner told the businessman that the deal had fallen through and that the money had been spent "covering some other expenses." Subsequently, according to the businessman's testimony, "it became increasingly difficult" to reach either Mr. Dunlap or his partner. The jury was entitled to believe this testimony.

The evidence was sufficient to convince a reasonable person beyond a reasonable doubt that Mr. Dunlap and his partner were working in a joint effort. We therefore believe that the evidence of the misrepresentations of Mr. Dunlap's partner, in conjunction with the deposit of the businessman's money into a joint account held by Mr. Dunlap and his partner, was sufficient to show Mr. Dunlap's intent to defraud the businessman of an additional $28,000.

II.

In the bench trial, an elderly farmer testified that Mr. Dunlap induced him to pay $50,000 to Mr. Dunlap by representing that the money would be used to purchase German bonds that would

-3-

provide a 100 percent return within six months.  In order to gain his trust, the farmer testified, Mr. Dunlap left with him a book of corporate minutes, allegedly to show that Mr. Dunlap "owned a lot of property [apartment buildings] and was worth some money."  Two other witnesses corroborated the farmer's testimony on those points.  The farmer then testified that he never heard from Mr. Dunlap again.

At the time of the $50,000 payment, according to the farmer's testimony, Mr. Dunlap prepared documents that the farmer witnessed without reading, thinking that they were updates of those corporate minutes.  In fact, however, the farmer said, the documents purported to show that the $50,000 was for the purchase by the farmer of the stock of the corporation whose minutes were left with him.  One other witness testified, however, that such a transfer of ownership would have had to be, but never was, approved by the government agency holding the mortgage on the apartment buildings owned by that corporation.  A different witness, the manager of the apartment buildings in question, testified that she had never been notified of any transfer of ownership.  We believe that the evidence of Mr. Dunlap's advance preparation to counter a protest from the farmer, along with the evidence that the alleged stock sale to the farmer was not a genuine transaction, was sufficient to convince a reasonable jury of Mr. Dunlap's intent to defraud the farmer of $50,000.

### III.

For the reasons stated, we affirm the judgments of the trial court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-4-